# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY G. SMITH, JR., | Case No. 3:15-cv-264 |
| Plaintiff, | JUDGE KIM R. GIBSON |
| v. | |
| LLOYD GENE ROGERS, JR., MARK YINGLING, RAY BAKER, BROOKE ECHARD, JOSEPH FOX, JUSTIN SHRIVER, PAUL KIFER, MICHAEL M. JOHNSTON, and BLAIR COUNTY, PENNSYLVANIA, | |
| Defendants. | |

## MEMORANDUM OPINION

In this civil-rights case, Harry G. Smith, Jr., has sued Blair County, Pennsylvania, several Blair County corrections officers, and the warden of Blair County's prison. He alleges that defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Smith has also sued one of the corrections officers—Lloyd Gene Rogers, Jr.—for willful misconduct, purportedly under 42 Pa. Cons. Stat. § 8550.[1] Pending before the Court is Smith's motion to compel discovery from Blair County (ECF No. 25). For the reasons that follow, Smith's motion to compel is **GRANTED IN PART** and **DEFERRED IN PART**.

---

[1] By its terms, § 8550 does not provide a private cause of action. *See Jackson v. Davis*, No. 2:13-cv-1717, 2014 WL 3420462, at *21 (W.D. Pa. July 14, 2014) (dismissing willful-misconduct claim under § 8550 because such a claim "is not a recognized cause of action under Pennsylvania law" (citation and footnote omitted)); *D'Altilio v. Dover Township*, No. 1:06-cv-1931, 2007 WL 2845073, at *2 n.6 (M.D. Pa. Sept. 26, 2007) (granting motion to dismiss because complaint did not set forth theory of recover and cited only § 8550, "a statute carving out exceptions to governmental immunity" (citation omitted)). Rather, § 8550 can make unavailable certain immunity defenses in actions against local agencies or employees. *D'Altilio*, 2007 WL 2845073, at *2 n.6.

## I. Background

Because this memorandum opinion addresses only Smith's motion to compel, only the facts relevant to that motion are included here.

On October 12, 2015, Smith filed this case under 42 U.S.C. § 1983 and 42 Pa. Cons. Stat. § 8850. Smith's suit stems from an incident that occurred on November 11, 2014, at the Blair County prison, where Smith was incarcerated at the time. He alleges that during that incident (1) Rogers used excessive force against Smith, (2) that the other corrections officers named as defendants were present and failed to intervene, (3) that the warden acted with deliberate indifference to Smith's personal safety by allowing the excessive force to occur and continuing to assign Rogers to Smith's prison block, and (4) that the warden and corrections officers acted pursuant to a custom or policy of Blair County. As to Blair County's liability, Smith states that the actions of the warden and corrections officers "[were] normal, routine and/or predictable conduct that was encouraged, approved, accepted and/or acknowledged by Defendant Blair County." (ECF No. 1 ¶¶ 93-97.) Smith argues that defendants' actions violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

## II. Jurisdiction & Venue

This Court has jurisdiction over Smith § 1983 claims pursuant to 28 U.S.C. § 1331 because those claims arise under the Constitution and laws of the United States. To the extent Smith is asserting a claim under 42 Pa. Cons. Stat. § 8550—and assuming that claim is cognizable—this Court has supplemental jurisdiction over that claim under 28 U.S.C. § 1367 because it is so related to the § 1983 claims that it is part of the same case or controversy. Further, because a substantial part of the events giving rise to Smith's claims—namely the

November 11, 2014 incident at the Blair County prison—occurred in the Western District of Pennsylvania, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

**III.     Legal Standard**

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." *See* Fed. R. Evid. 401. In determining whether discovery is proportional to the needs of the case, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Furthermore, "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." *Id.* But although the right to discovery under the Federal Rules is broad, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (citation omitted). The scope of discovery once included information that was "reasonably calculated" to lead to the discovery of relevant evidence, but Rule 26 as amended no longer includes this language. *Grant Heilman Photography, Inc. v. McGraw-Hill Cos.*, No. 12-cv-2061, 2016 WL 687176, at *2 (E.D. Pa. Feb. 19, 2016) ("The Court notes that the 'reasonably calculated' justification for discovery no longer exists in Rule 26, by virtue of amendments which became effective as of December 1, 2015.").

Rule 37 provides the mechanism to compel discovery from a person or party who refuses to provide discovery. The party moving to compel discovery under Rule 37 bears the initial burden of proving the relevance of the material requested. *See Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) (citations omitted). If the movant meets this initial burden, the burden then shifts to the party resisting discovery to establish that discovery of the material requested is inappropriate. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (citation omitted). The party resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient. *See Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982).

IV.   **Analysis**

On December 28, 2016, Smith filed the motion to compel (ECF No. 25) before the Court. Smith's motion and Blair County's response (ECF No. 26) provide a detailed chronology of the discovery in this case—which the Court appreciates—but most of the disputes and events preceding Smith's motion to compel are irrelevant for purposes of this memorandum opinion.[2] What is relevant is the discovery Smith seeks through his motion to compel, which is:

   a. Video surveillance of any incident, event or occurrence at any time prior to the subject Incident;

   b. Video surveillance of any incident, event or occurrence at any time subsequent to the subject Incident; and

   c. Documents and/or communications relating to any investigations, studies, examinations, internal affairs

---

[2] The Court does note that it appears Blair County repeatedly failed to disclose materials which it claimed to have produced. Blair County admits this but claims inadvertence. (ECF No. 26 ¶¶ 14.a, 14.d, 19-20.) Blair County is reminded of its obligation to be diligent in its discovery responses, and that inadvertence is no excuse. *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 242-43 (3d Cir. 2007).

-4-

investigations and/or inspections which relate to or refer to the Blair County Prison.

(ECF No. 25 ¶ 20.) In his motion, Smith states that these materials were requested from Blair County as request numbers 4, 5, and 14, respectively, in Smith's first request for production of documents. (ECF No. 25 ¶ 20.) A review of the copy of Smith's first request for production of documents provided by Blair County (ECF No. 26-1) makes clear that requests number 4 and 5 seek materials specifically involving the warden and named corrections officers.

Smith also explains in his motion that this first request for production of documents defined certain terms. "Incident" means "the event that took place on November 11, 2014 at the Blair County Prison, which is more fully set forth in Plaintiff's Complaint, to wit: Lloyd Gene Rogers, Jr. [sic] assault on Plaintiff." (ECF No. 25 ¶ 5.b n.1.) And "[i]ncident, event or occurrence" means "any event in which force was used against an inmate, employee, or other individual and/or any event which was the basis for criminal and/or civil litigation." (*Id.* ¶ 5.d n.2.)

Smith explains further why he believes Blair County has not produced all materials responsive to request numbers 4, 5, and 14. Regarding request number 4, he states that other documents produced by Blair County confirm the existence of a video of an argument between several Blair County corrections officers, including defendant Paul Kifer,[3] that occurred before November 11, 2014, and which escalated to the point that Kifer had to be restrained. (ECF No. 25 ¶ 14.b.i.)

---

[3] In his motion, Smith occasionally writes "Keefer." (*See* ECF No. 25 ¶ 14.b.i.) For consistency, the Court will use the surname in the case caption—Kifer—throughout this memorandum opinion.

Regarding request number 5, Smith states that documents produced by Blair County confirm the existence of a video of a "physical altercation" that occurred after November 11, 2014, and which involved several inmates and to which nine officers responded—including defendant Joseph Fox. (ECF No. 25 ¶ 14.c.iii; *see also* ECF No. 26 at 10.) Smith states also regarding request number 5 that "an incident involving Defendant Kifer sexually assaulting another employee was viewed by surveillance video. This assault occurred on October 2, 2015." (ECF No. 25 ¶ 14.c.iv.)

Regarding request number 14, Smith states that Blair County has produced a redacted version of a report that resulted from a 2013-2014 investigation of the Blair County prison conducted by the Pennsylvania Department of Corrections ("PADOC"). (*Id.* ¶ 14.e.) Smith contends that these redactions were improper because "[t]he redacted information may certainly lead to the discovery of admissible information." (*Id.* ¶ 14.e.iv.) Smith contends further that Blair County's responses to request number 14 were deficient because Blair County has not produced the records underlying the PADOC report.

So to summarize, Smith seeks production of four specific things:

(1) Video surveillance of a physical altercation between defendant Kifer and other corrections officers that occurred before the incident involving Smith;

(2) Video surveillance of a physical altercation involving several inmates and corrections officers—including defendant Fox—that occurred after the incident involving Smith;

(3) Video regarding an alleged sexual assault involving defendant Kifer that occurred after the incident involving Smith; and,

>    (4) The unredacted PADOC investigation report, as well as all documents underlying the report.

More generally, Smith requests that all other information responsive to the requests underlying these four specific items be produced also.

Blair County's response to Smith's motion to compel is straightforward. Blair County argues that Smith's claims are premised on two "customs" of Blair County, and that the information Smith is demanding is not relevant to either of those customs. Blair County also incorporates by reference its arguments from its discovery responses. In those responses, Blair County argues that any videos that postdate Smith's incident are not relevant to his claims. And as to all videos—of incidents both after and before Smith's—Blair County argues that they involve conduct too dissimilar from the issues in this case to be relevant. Blair County appears to contend that the videos would be relevant only if they were of incidents involving excessive force by corrections officers against inmates.

As to the requested videos, the Court holds that Blair County cannot avoid their production on the basis of irrelevancy. Although the Court gives no opinion on the videos' admissibility, they are relevant to Smith's claims and it does not appear that their production would be disproportional to the needs of this case.

The Court will discuss relevance first. Relevance is a low bar; the question is merely whether the evidence "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." *See* Fed. R. Evid. 401. Although Blair County is correct in stating that a custom in § 1983 cases can be established through evidence of "similar unlawful conduct" (ECF No. 26 at 2 (citing *Beck v. City*

*of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996)), it does not follow that a custom can be established *only* by evidence of similar unlawful conduct. Nor does it follow that dissimilar conduct is automatically irrelevant.

The incidents reflected in the videos which Smith seeks, as well as Blair County's response to those incidents, can shed light on the county's customs or practices at the time of Smith's incident. *See Bordanaro v. McLeod*, 871 F.2d 1151, 1156-57 (1st Cir. 1989) ("post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right"); *cf. Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) ("As subsequent conduct may prove discriminatory motive in a prior employment decision, and subsequent acts may tend to prove the nature of a prior conspiracy, so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy." (citations omitted)). A factfinder may draw inferences from the videos regarding what Blair County knew about its corrections officers and their behavior—and when Blair County knew these things—and thus whether Blair County acted with deliberate indifference toward the rights of Smith.

This leaves proportionality. Blair County has not argued that production of the videos would be disproportional to the needs of this case, and the Court does not see how it would be. The county is clearly in possession of the videos and presumably has the means to produce them without incurring significant costs. Thus, production of the videos appears proportional to the needs of the case.

With both the relevance and proportionality requirements satisfied, it follows that production of the videos is appropriate. The Court will, however, impose a temporal constraint

on the production of videos of events prior to Smith's incident. Events that significantly predate Smith's incident would be of little to no relevance to his claims, and the Court finds that requiring Blair County to review and produce every video—no matter how old—would be disproportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). Thus, Blair County will be ordered to produce only videos of events that occurred on or after November 11, 2011—three years prior to Smith's incident.

Further, as noted above, the Court gives no views on the admissibility of the videos. It may very well be that the videos are of such marginal relevance or unfairly prejudicial that their exclusion at trial would be appropriate. But the admissibility of the videos is an issue for another day.

This leaves Smith's request for the unredacted PADOC investigation report and all documents underlying the report. Smith states that the redacted information includes:

> (1) names of Correction Officers and/or other witnesses to misconduct occurring at Blair County Prison; (2) information related to security issues at Blair County Prison; (3) information related to Equal Employment Opportunity issues; (4) information related to Operational Issues; (5) information related to "several areas of concern" at Blair County Prison; (6) issues related to "Management Concerns"; and (7) recommendations from the Pennsylvania DOC to Defendant Blair County.

(ECF No. 25 ¶ 14.e.iii.) Further, Smith states that the redacted information "may certainly lead to the discovery of admissible information, such as: (1) those witnesses who may need to be deposed; (2) whether Defendant Blair County implemented any recommendations; and (3) whether the actions and/or conduct of Correction Officers was known prior to the assault which forms the basis of Plaintiff's claims." (*Id.* ¶ 14.e.iv.)

Blair County responds that it redacted the report "to omit the identity of individuals who provided information to the Department of Corrections with the promise that their identities would be protected and kept confidential" and "to redact those portions of the report pertaining to the administration of the prison which have no conceivable relevance to Plaintiffs claims." (ECF No. 26 at 8.) Blair County states that Smith was provided with "all portions of the DOC report which conceivably bore any relations to allegations of excessive use of force by Corrections Officers and even other misconduct of Corrections Officers." (*Id.*)

Blair County's first response is well taken. Its objection to a roving examination of the people who provided the information underlying the PADOC report is reasonable; if these people provided information with the understanding that their identity would remain confidential then exposing them to subpoenas or depositions may very well deter them from providing information in the future. And certain information regarding the administration of the prison may also very well not be discoverable; numerous federal courts in Pennsylvania have sustained claims of confidentiality over documents in order to preserve legitimate penological interests of safety and security. *See Mercaldo v. Wetzel*, No. 1:13-cv-1139, 2016 WL 5851958, at *3 (M.D. Pa. Oct. 6, 2016) (citing cases); *Adams v. Hunsberger*, No. 04-cv-213, 2007 WL 200956, at *1 (W.D. Pa. Jan. 23, 2007).

But the Court is without sufficient information to make any determination regarding whether Blair County's arguments apply to the information Smith seeks. Notably—and as Smith points out—Blair County has not actually claimed that a privilege applies to the PADOC report or the underlying information. And although there may be strong public-policy arguments that the identities of people who provided information to the Department of

Corrections should remain confidential, Blair County has provided no legal support for this assertion.

Nevertheless, the Court will not at this time order Blair County to produce the PADOC investigation report or the underlying information. Instead, Blair County is directed to produce the following to the Court for in camera review:

1. The unredacted 2013-2014 PADOC investigation report;

2. All information underlying the 2013-2014 PADOC investigation report (including the internal investigation on which the report was based) related to:

   a. Corrections-officers' misconduct;

   b. Management concerns regarding prisoner safety and corrections officers, and;

   c. Recommendations from the PADOC to Blair County.

These are some, but not all of the categories of information regarding the PADOC report Smith identifies in his motion and proposed order. The Court finds that the categories listed above encompass the information that may be relevant to Smith's claims, and that requiring Blair County to produce the remaining categories of information—even for in camera review—would be disproportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

Blair County shall provide the documents listed above to the Court forthwith, as more specifically set forth in the order accompanying this memorandum opinion. Along with these documents, Blair County shall file a supplemental brief—under seal if it so chooses—identifying with specificity any privilege it may seek to assert regarding these documents and stating why a confidentiality order is insufficient to address its concerns. The Court will then

determine whether a response by Smith is appropriate or issue a directive as to whether the documents should be produced.

**V.      Conclusion**

Smith's motion to compel (ECF No. 25) is **GRANTED IN PART** and **DEFERRED IN PART**. A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY G. SMITH, JR., | ) | Case No. 3:15-cv-264 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| LLOYD GENE ROGERS, JR., MARK YINGLING, RAY BAKER, BROOKE ECHARD, JOSEPH FOX, JUSTIN SHRIVER, PAUL KIFER, MICHAEL M. JOHNSTON, and BLAIR COUNTY, PENNSYLVANIA, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**NOW**, this 9th day of February 2017, upon consideration of Harry G. Smith, Jr.'s motion to compel (ECF No. 25) and for the reasons set forth in the memorandum opinion accompanying this order, it is **HEREBY ORDERED** that Smith's motion to compel (ECF No. 25) is **GRANTED IN PART** and **DEFERRED IN PART** as follows:

- **On or before March 3, 2017**, Blair County shall provide Smith with full and complete responses to Smith's Request for Production of Documents No. 4, including any video surveillance, audio, or pictures related to any other incident, event or occurrence—as those terms are defined in Smith's document requests—which occurred between November 11, 2011, and the November 11, 2014 incident involving Smith. Blair County's responses shall include but not be limited to the video surveillance of the "heated exchange" between Paul Kifer and corrections officers Hursh, Bailey, and Stoltz, during which Kifer was physically restrained.

- **On or before March 3, 2017**, Blair County shall provide Smith with full and complete responses to Smith's Request for Production of Documents No. 5,

including any video surveillance, audio, or pictures related to any other incident, event or occurrence at any time—as those terms are defined in Smith's document requests—after the November 11, 2014 incident involving Smith. Blair County's responses shall include but not be limited to the video of the June 22, 2015 altercation between three inmates and nine corrections officers as well as the video regarding the October 2, 2015 sexual assault involving Kifer.

- **On or before 12:00 p.m. on March 3, 2017**, Blair County shall produce the following to the Court for in camera review:
    1. The unredacted 2013-2014 PADOC investigation report;
    2. All information underlying the 2013-2014 PADOC investigation report (including the internal investigation on which the report was based) related to:
        a. Corrections-officers' misconduct;
        b. Management concerns regarding prisoner safety and corrections officers, and;
        c. Recommendations from the PADOC to Blair County.

    Along with these documents, Blair County shall file a supplemental brief—under seal if it so chooses—identifying with specificity any privilege it may seek to assert regarding these documents and stating why a confidentiality order is insufficient to address its concerns.

After the Court conducts its in camera review and considers Blair County's supplemental brief, the Court will determine whether a response by Smith is appropriate or issue a directive as to whether the documents should be produced.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE