IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY G. SMITH, JR., | ) | Case No. 3:15-cv-264 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| LLOYD GENE ROGERS, JR., MARK | ) | |
| YINGLING, RAY BAKER, BROOKE | ) | |
| ECHARD, JOSEPH FOX, JUSTIN | ) | |
| SHRIVER, PAUL KIFER, MICHAEL M. | ) | |
| JOHNSTON, and BLAIR COUNTY, | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Pending in this civil-rights case is a residual discovery issue that was originally raised in Plaintiff Harry G. Smith, Jr.'s motion to compel dated December 28, 2016 (ECF No. 25). The Court, in ruling on that motion, ordered Defendant Blair County to provide the Court with certain documents for in camera review so that it could determine whether they should be produced to Smith in unredacted form. The Court has now completed its review and, for the reasons below, will order Blair County to produce portions of the documents in unredacted form.

I.    **Background**

On October 12, 2015, Smith filed this case against Blair County, Pennsylvania, several Blair County corrections officers, and the warden of Blair County's prison. Smith's suit stems from an incident that occurred on November 11, 2014, at the Blair County prison, where Smith was incarcerated at the time. He alleges that during that incident (1) corrections officer Rogers

used excessive force against Smith, (2) that the other corrections officers named as defendants were present and failed to intervene, (3) that the warden acted with deliberate indifference to Smith's personal safety by allowing the excessive force to occur and continuing to assign Rogers to Smith's prison block, and (4) that the warden and corrections officers acted pursuant to a custom or policy of Blair County. Smith alleges further that the actions of the warden and corrections officers "[were] normal, routine and/or predictable conduct that was encouraged, approved, accepted and/or acknowledged by Defendant Blair County." (ECF No. 1 ¶¶ 93-97.) Smith thus asserts civil-rights claims under 42 U.S.C. § 1983 and 42 Pa. Cons. Stat. § 8850; he argues that Defendants' actions violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

During discovery—on December 28, 2016—Smith moved for an order compelling Blair County to produce certain surveillance videos as well as the unredacted version of an investigative report about Blair County's prison that was prepared by the Pennsylvania Department of Corrections ("PADOC"). Blair County had refused to produce these materials on relevance and privilege grounds. This Court granted in part Smith's motion to compel. (ECF No. 27, *Smith v. Rogers*, No. 15-cv-264, 2017 WL 544598, at *6-7 (W.D. Pa. Feb. 9, 2017).) Regarding the surveillance videos, the Court held that these were relevant to Smith's claims and ordered Blair County to produce them—subject to some limitations—to Smith. But the Court deferred ruling on Smith's request for the unredacted PADOC report. Instead, the Court ordered Blair County to provide the unredacted report to the Court for in camera review and to file a supplemental brief identifying with specificity any privilege that it was asserting

regarding the report. Blair County did so and the Court has now completed its review of the unredacted report.

As is explained in (even the unredacted) PADOC report, the underlying investigation was prompted by a request from a judge of the Blair County Court of Common Pleas based on possible misconduct involving prison employees. (*See* BLAIR1330.[1]) The report explains further that the investigation was conducted by the PADOC Office of Special Investigations and Intelligence and that, as part of that investigation, staff from that office interviewed prison employees, toured the prison, and "examined polic[ies] and procedures that affect the orderly operation of the prison." (BLAIR1331.) The report spans 12 pages, but also at issue here are 42 pages of records regarding Blair County's internal investigation into prison-employee misconduct.[2] Most of these 42 pages appear to have been prepared by the prison's HR director.

## II.    Legal Standard

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This scope formerly included matters that were "reasonably calculated" to lead to the discovery of relevant evidence, but Rule 26 as amended no longer includes this language. Whether evidence is admissible does not affect whether it is discoverable. Fed. R. Civ. P. 26(b)(1). And although the scope of discovery under the Rules is broad, a party's right to discovery "is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173

---

[1] This is on file with the Court and also in possession of counsel. Any citations to the PADOC report in this opinion will use the Bates numbers on the redacted version of the report; the unredacted version is not Bates labeled.

[2] When the Court refers to the PADOC report, it means both the report and these related materials (BLAIR1328-83).

F.3d 188, 191 (3d Cir. 1999) (citing *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1322 (Fed. Cir. 1990)).

### III.    Discussion & Analysis

The scope of discovery contains two limitations that are pertinent here: relevance and privilege. *See* Fed. R. Civ. P. 26(b)(1) ("any *nonprivileged* matter that is *relevant* to any party's claim or defense" (emphasis added)). A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." *See* Fed. R. Evid. 401. But "[r]elevance is a low bar." *Phila. Workforce Dev. Corp. v. KRA Corp.*, 673 F. App'x 183, 190 (3d Cir. 2016). As for privilege, Blair County asserts that the PADOC report is exempt from discovery under a broad "governmental privilege." (ECF No. 30 at 1.) The Court discusses relevance and privilege in turn below, and holds that production of portions of the PADOC report in unredacted form is warranted.

### A.    Relevance

Relevance is no bar to the discovery of the PADOC report, and Blair County does not really argue otherwise. Among other things, Smith alleges that Blair County had a custom or policy of approving or accepting Defendant Rogers's use of excessive force on inmates and of approving or accepting the other named corrections officers' deliberate indifference to the constitutional rights of inmates. (*See* ECF No. 1 ¶¶ 94, 95.) The PADOC report—including some of the redacted material—addresses matters like the training of corrections officers and the supervision offered by the warden, Defendant Johnston. The report therefore has a "tendency to make a fact" of consequence in this case—namely whether Blair County was aware of its corrections officers' alleged conduct and accepted that conduct—"more or less

probable than it would be without the evidence."  Fed. R. Evid. 401.  A factfinder can draw

inferences from the report regarding what Blair County knew about its corrections officers and

their conduct and when Blair County knew these things.  By extension, a factfinder can draw

inferences from the report regarding whether Blair County acted with deliberate indifference

toward the rights of Smith.  The report is thus relevant.

### B.      Privilege

Blair County's main argument against disclosure is that the redacted portions of the

PADOC report are exempt from discovery under a governmental privilege.  Blair County blurs

the lines somewhat as to the exact privilege it is asserting; it invokes "the governmental

privilege" and states that this privilege "has been called by several names, including, *inter alia*,

the deliberative process privilege, the executive privilege, the official information privilege, the

confidential intra-agency privilege, and predecisional privilege."  (ECF No. 30 at 1-2.)  But an

examination of the cases Blair County cites suggests that it is actually asserting two distinct

privileges:  the  so-called  deliberative-process  privilege,  which  shields  predecisional

governmental deliberations, as well as the law-enforcement investigatory privilege, which is

sometimes asserted in civil-rights cases involving executive actors or institutions and shields

investigative materials.  The Court will address each below.

### i. Deliberative-Process Privilege

The principal Supreme Court case on the deliberative-process privilege is *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975).[3] The Court did not call the privilege the "deliberative-process privilege" in *Sears*—subsequent cases appear to have coined that term—but discussed the contours and purpose of the privilege. The Court explained that the privilege is derived from the government's executive privilege and that it protects the deliberative and decisionmaking processes of government. *Sears*, 421 U.S. at 150. The privilege is animated by the recognition that the candid discussion of legal and policy issues by government officials would be deterred if those discussions were subject to public disclosure, and that the quality of any resulting decisions would thereby suffer. *Id.* at 150-51; *cf. United States v. Nixon*, 418 U.S. 683, 705 (1974) ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." (footnote omitted)). Although the Court in *Sears* described the privilege as an executive one, courts have recognized that it may be asserted by decisionmakers of all three branches of government. *See In re Grand Jury*, 821 F.2d 946, 957-59 (3d Cir. 1987) (citing cases); *Harris v. City of Philadelphia*, No. 82-cv-1847, 1995 WL 350296, at *7 (E.D. Pa. June 6, 1995) (same).

---

[3] *Sears* addressed the privilege in the context of Exemption 5 of the Freedom of Information Act, but that is a distinction without a difference. Exemption 5 incorporated background common-law principles of privilege, *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("Although [the deliberative-process] privilege is most commonly encountered in Freedom of Information Act ("FOIA") litigation, it originated as a common[-]law privilege." (citing cases)), and cases addressing the deliberative-process privilege analyze such claims the same way regardless of whether the claim arises under Exemption 5, *see Redland Soccer Club, Inc. v. Dep't of the Army*, 55 F.3d 827, 854 (3d Cir. 1995) (analyzing deliberative-process privilege and applying *Sears* in non-Exemption 5 case).

The deliberative-process privilege allows the government to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150 (internal quotation marks omitted) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). Implicit in the privilege's scope is the requirement that the communications must be predecisional. *Id.* at 151-52 (citing cases); *Redland*, 55 F.3d at 854 ("[the privilege] does not protect communications made subsequent to an agency decision" (internal quotation marks and brackets omitted) (quoting *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993))). That is so because the disclosure of deliberations about decisions that have already been made typically does not impair the quality of those decisions. *See Sears*, 421 U.S. at 151-52 n.9 (disclosure of postdecisional discussions "poses a negligible risk of denying to agency decisionmakers the uninhibited advice which is so important to agency decision").

As the deliberative-process privilege's name suggests, the material sought to be withheld must be deliberative; purely factual material usually does not reveal anything that would prompt officials to watch their words out of a concern for possible disclosure. *See Paisley v. CIA.*, 712 F.2d 686, 699 (D.C. Cir. 1983) ("in most situations factual summaries prepared for informational purposes will not reveal deliberative processes and hence should be disclosed" (citing cases)), *unrelated parts vacated*, 724 F.2d 201 (D.C. Cir. 1984). Even if documents contain material that is both deliberative and factual, factual material that can be severed from the deliberative material is not covered by the privilege. *EPA v. Mink*, 410 U.S. 73, 87-88 (1973) ("memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for

discovery"); *Redland*, 55 F.3d at 854 ("The deliberative[-]process privilege does not protect factual information, even if such information is contained in an otherwise protectable document, as long as the information is severable." (citing *In re Grand Jury*, 821 F.2d at 959).

As the foregoing citations illustrate, in many of the cases where the deliberative-process privilege was asserted it was a *federal* department or agency asserting the privilege. But the Court sees no persuasive reason why states or local governments—like Blair County—would not also be entitled to assert the privilege. Generally speaking, the privilege's motivating rationale is implicated regardless of whether the deliberations occurred at the federal, state, or local level; if the communications are part of "a process by which governmental decisions and policies are formulated," *Sears*, 421 U.S. at 150 (citation omitted), then the prospect of public dissemination can chill those communications.[4]

The initial burden of showing that the deliberative-process privilege applies rests with the government. *Redland*, 55 F.3d at 854 (citing *Schreiber v. Soc'y for Savings Bancorp, Inc.*, 11 F.3d 217, 221 (D.C. Cir. 1993)). The Third Circuit has further held that there are certain procedural requirements that the government must follow when asserting a claim of executive privilege. *O'Neill*, 619 F.2d at 225-26 (detailing the procedures for asserting executive privilege and citing cases). The head of the government department or agency in question "must personally review the material" and provide both "a specific designation and description of the documents

---

[4] Moreover, numerous district courts have allowed local and municipal governments to assert the privilege. *See Reid v. Cumberland County*, 34 F. Supp. 3d 396, 405-07 (D.N.J. 2013) (analyzing—though rejecting on other grounds—claim to deliberative-process privilege by New Jersey county department of corrections); *Harris*, 1995 WL 350296, at *5-6 (same, but privilege was asserted by City of Philadelphia and Philadelphia County Court of Common Pleas). *But see United States v. O'Neill*, 619 F.2d 222, 230 n.5 (3d Cir. 1980) ("In light of the posture of this case, we express no view as to whether the scope of Executive Privilege available to a state or municipality in a federal cause of action is comparable to that applicable to the federal government." (citation omitted)).

claimed to be privileged" as well as "precise and certain reasons for preserving the confidentiality of the communications." *Id.* at 226 (internal quotation marks omitted) (quoting *Smith v. FTC*, 403 F. Supp. 1000, 1016 (D. Del. 1975)); *see also Redland*, 55 F.3d at 854 (holding that the government—to meet its initial burden—"must present more than a bare conclusion or statement that the documents sought are privileged" (citation omitted)). Usually, this is done through the submission of an affidavit prepared by the department head. *See O'Neill*, 619 F.2d at 226 (citation omitted). Courts in the Third Circuit have routinely held that claims to the deliberative-process privilege concerning documents must be presented by the agency head rather than by counsel. *See, e.g.*, *Griffin-El v. Beard*, No. 06-cv-2719, 2009 WL 1606891, at *4 (E.D. Pa. June 8, 2009); *Startzell v. City of Philadelphia*, No. 05-cv-5287, 2006 WL 2945226, at *2 n.5 (E.D. Pa. Oct. 13, 2006); *Scott Paper Co. v. United States*, 943 F. Supp. 501, 501-02 (E.D. Pa. 1996); *Smith*, 403 F. Supp. at 1016. And courts in the Third Circuit have rejected claims to the privilege when there was "no indication . . . that the department heads made the type of personal careful examination [that] must precede invocation of the privilege." *Griffin-El v. Beard*, No. 06-cv-2719, 2009 WL 678700, at *5 (E.D. Pa. Mar. 16, 2009) (quoting *O'Neill*, 619 F.2d at 226); *see also Lee v. Developers Diversified Realty Corp.*, No. 09-cv-210, 2009 WL 1607900, at *1 (W.D. Pa. June 8, 2009) (noting that county's failure to submit affidavit by agency head in and of itself "could be fatal to [its] claim of executive privilege" (citing cases)).

Once the privilege has been appropriately invoked, the court must conduct a two-step review. *Redland*, 55 F.3d at 854. "First, it must decide whether the communications are in fact privileged. Second, the court must balance the parties' interests." *Id.* In balancing those interests, the Third Circuit has suggested that courts should consider at least the following

factors: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Id.* (citing *First E. Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994)). With this framework in mind, the Court turns to Blair County's arguments.

As a threshold matter, Blair County has failed to properly assert its claim of privilege. Blair County has not filed an affidavit—or any other document—establishing that the relevant department head personally reviewed the contested material and engaged in the level of examination required for the invocation of a governmental privilege. Blair County cursorily asserts that its failure to submit such an affidavit may be excused because the documents were submitted for in camera review, and in support cites several decisions that do indeed suggest as much. But in camera review only shows the Court what the contested material is. It does not provide any assurance that the governmental unit or agency asserting the privilege (rather than its attorney) has directed its attention to the material and the claim of privilege. *See O'Neill*, 619 F.2d at 226. Nor does in camera review provide the Court with the same type of information that an affidavit can convey. In an affidavit, the department head can offer context to the claim of privilege and explain *why* disclosure of specific material would be contrary to the deliberative-process privilege's animating purpose. Counsel's arguments can be helpful on these points, but they cannot offer the same type of insight that the department head can offer. Without such an affidavit the Court will therefore likely have to speculate about the effects of

disclosure and whether certain material is actually predecisional and deliberative. Thus, in

camera review is at best only a partial substitute for the affidavit requirement.

Although Blair County's failure to include an affidavit from the relevant department

head "could be fatal to [its] claim of executive privilege" *Lee*, 2009 WL 1607900, at *1, the Court

is loath to disclose the identity of third parties that provided information to the PADOC—or to

potentially jeopardize the security of Blair County's prison—based on Blair County's failure to

file an affidavit.[5] The Court will therefore overlook this omission in this case.

Substantively, the main problem with Blair County's invocation of the deliberative-

process privilege is that much of the portions of the PADOC report that it seeks to withhold is

purely factual in nature—yet the privilege "does not protect factual information." *Redland*, 55

F.3d at 854 (citation omitted). For example, Blair County has redacted the entire Security Issues

section of the report (BLAIR1335-36), but that section mostly contains factual material about

issues that were revealed during the PADOC investigation.[6] Similarly, under the Management

Concerns section, Blair County has not redacted these two paragraphs:

> There is a widespread perception among prison staff that
> inappropriate behavior and other staff misdeeds are not properly
> reported, investigated and disciplined. Employees feel that the
> warden ignores conflicts among staff and that he favors some
> employees at the expense of others.
>
> Staff members related that they do not see managers conducting
> regular tours of the prison.

---

[5] The lesson here is that the affidavit requirement is not an empty formality that may always be bypassed
through in camera review. If the PADOC report did not include the names of third parties who provided
information to the PADOC and did not identify issues with prison security, the Court would order
disclosure of the entire PADOC report on the basis of Blair County's failure to submit an affidavit.

[6] Granted, the section does contain two policy recommendations connected to these issues, but that does
not seem to justify redacting the entire section.

(BLAIR1339.)  Yet Blair County redacted the preceding paragraph.  That redacted paragraph—

which seemingly contains no "advisory opinions, recommendations and deliberations

comprising part of a process by which governmental decisions and policies are formulated,"

*Sears*, 421 U.S. at 150 (internal quotation marks and citation omitted), and is therefore not

covered by the deliberative-process privilege—provides:

> Staff members reported that Warden Johnston has spoken to staff
> members in an unprofessional manner.  Specifically, it was
> reported that Warden Johnston has engaged in behavior to belittle
> Captain Wyland in front of other staff members and during
> conversations that Captain Wyland was not present [sic].

(BLAIR1339.)   To the extent one might argue that this paragraph contains the factual

underpinnings of a possible policy recommendation and is thus inextricably intertwined with a

process by which governmental decisions are made, that argument is unconvincing given that

Blair County did not redact the two paragraphs that follow it; those contain the same type of

factual information, though they are less specific.  The redacted paragraph is purely factual in

nature, and thus not covered by the deliberative-process privilege.

But swaths of the PADOC report are covered by the deliberative-process privilege.  The

report contains a section titled Recommendations, which spans from the bottom of page 10 to

page 12 (BLAIR1339-41), and virtually all of the contents of that section qualify as "advisory

opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated."  *Sears*, 421 U.S. at 150 (citation omitted).

That section is thus properly redacted.  The same is true for the redaction of the top paragraph

on BLAIR1349; that paragraph is entirely deliberative in nature and is thus privileged.

Most of the redactions in the PADOC report, however, shield the names of people who

provided information to the PADOC as part of the investigation or the security issues identified

during the investigation. Those matters are not covered by the deliberative-process privilege

because all that information is factual in nature. That brings us to the second privilege Blair

County appears to be asserting: the law-enforcement investigatory privilege.

### ii.     Law-Enforcement Investigatory Privilege

In its supplemental brief, Blair County cites *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.

Pa. 1973), and urges the Court to apply the balancing test and factors used in that case.

*Frankenhauser* was a civil-rights case against the Philadelphia Police Department and several

police officers. Plaintiffs sought certain investigative reports and related materials from

defendants, which they refused to produce on the basis of—among other things—executive

privilege. Defendants argued that the disclosure of police-investigative records would "have a

chilling effect upon the [police] department and would impede candid and conscientious self-

evaluation of actions of the department," and that "parties to police operations would become

reluctant to talk, that witnesses would hesitate to come forward, and that law enforcement

officials' actions would be guided less by the call of duty than by a continual fear of lawsuits

arising out of their official conduct." *Frankenhauser*, 59 F.R.D. at 342. The court agreed, and held

as follows:

> when executive privilege is asserted, the court must balance the
> public interest in the confidentiality of governmental information
> against the needs of a litigant to obtain data, not otherwise
> available to him, with which to pursue a non-frivolous cause of
> action. Needless to say, the balancing task will often be difficult
> and the ingredients of the test will vary from case to case. In the
> context of discovery of police investigation files in a civil rights

case, however, at least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.* at 344 (footnote omitted).[7]

Blair County appears to suggest that courts utilize the *Frankenhauser* factors in deciding whether material is covered by the deliberative-process privilege, but *Frankenhauser's* own language and cases applying *Frankenhauser* do not support that suggestion. As can be gleaned from *Frankenhauser*'s factors, the scope of the privilege described in that case is greater than the scope of the deliberative-process privilege. The first three factors require courts to examine the degree to which disclosure of *factual* information would hinder law-enforcement functions. But the deliberative-process privilege does not protect factual information. *Redland*, 55 F.3d at 854. The privilege described in *Frankenhauser* is thus distinct from the deliberative-process privilege, and is better called—as one court named it—the law-enforcement investigatory privilege. *See In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988) (referring to "the law enforcement investigatory

---

[7] Although *Frankenhauser* relied in part on the provisions of proposed Federal Rule of Evidence 509—which has since been deleted by Congress—that fact is immaterial here.

privilege" and applying *Frankenhauser* in that context); *see also G-69 v. Degnan*, 130 F.R.D. 326, 332 (D.N.J. 1990) (citing *Frankenhauser* in context of discovery dispute regarding law-enforcement files); *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987) (applying *Frankenhauser*'s factors in resolving such a dispute); *Crawford v. Dominic*, 469 F. Supp. 260, 263 (E.D. Pa. 1979) (same).[8]

Although *Frankenhauser* continues to be influential at the district-court level of this circuit, the Third Circuit itself has not adopted its test. *See O'Neill*, 619 F.2d at 230 (discussing "the concept of general confidentiality of [governmental] investigatory files" and citing *Frankenhauser* in dicta, but declining to decide whether a privilege over such files exists). This Court finds *Frankenhauser*'s reasoning persuasive, however, and believes that the Third Circuit would adopt its balancing test if presented with the question. The Court will therefore analyze Blair County's claim of privilege over the PADOC report under *Frankenhauser*.

Applying the *Frankenhauser* factors, the Court holds that the names of people who provided information during the PADOC investigation are exempt from discovery under the law-enforcement investigatory privilege. The first three *Frankenhauser* factors—(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; and (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure—are sufficiently implicated here to justify shielding the names of people who provided information during the PADOC

---

[8] Blair County may not seem to fit the traditional mold of law enforcement, but *Frankenhauser* has been applied in the context of discovery disputes over prison investigative records. *See Maritnez v. Jones*, No. 12-cv-1547, 2015 WL 3454505, at *3 (M.D. Pa. May 29, 2015).

investigation. The other *Frankenhauser* factors are either inapplicable in the context of this case or do not outweigh the first three factors. Although some of the information these people reported sheds light on the adequacy or inadequacy of the supervision offered to prison employees, it appears that Smith could obtain the same information through depositions of employees who worked at the prison during the relevant timeframe—like the prison HR director—and inquiring about their observations and experiences without implicating what specific employees disclosed to the PADOC.[9]

Most of the remaining redactions also pass muster under the *Frankenhauser* factors. The redactions under the section titled Tour and Assessment of the Prison (BLAIR1338-39) mainly relate to evaluations of prison procedures and their disclosure could plausibly deter future evaluations of a similar nature. Disclosing these issues could also jeopardize the security of the prison. In addition, the specific issues discussed are sufficiently attenuated from the claims in this case to exempt them from disclosure. Thus, the balance tilts against discovery. And the same holds true for the matters covered under the Security Issues section (BLAIR1335-36).

But the redacted portions of the Operational Issues section (BLAIR1337) are a different matter. Those portions directly address issues of inadequate training and the failure of officers to meet training requirements, which are highly relevant to Smith's claims that Blair County acquiesced in or approved of its corrections officers' use of force. The redacted information does not include any names, so no identities will be revealed by disclosure of this information,

---

[9] The Court recognizes that Smith did not get to file a response to Blair County's supplemental brief. If Smith believes that certain facts reported by a person during the PADOC investigation are sufficiently important that the disclosure of that specific person's identity is appropriate under *Frankenhauser*, he may raise this by renewed motion. Such a motion should identify with specificity why that person's disclosure is appropriate under *Frankenhauser*.

and the Court finds that the importance of this information to Smith's claims outweighs the other *Frankenhauser* factors.

The Court would be remiss if it did not note that many of Blair County's redactions to the PADOC report appear haphazard and that their rationale is sometimes difficult to decipher. There are numerous examples of Blair County's inconsistent redactions—like names redacted at certain points but disclosed at others, and factual issues redacted at one point but later disclosed anyway. Blair County's irregular rationale for redactions detracts from its claim of privilege because it suggests that the privilege is being invoked without sufficient care. That is why an affidavit from the relevant department head is typically required; it ensures that the privilege is not invoked lightly.

## IV.     Conclusion

Relevance is no bar to the discovery of the PADOC report, though parts of the report are properly withheld as privileged. Blair County need not disclose the names of people who provided information to the PADOC, nor need it disclose issues of prison security. But Blair County will produce the PADOC report and unredact the following:

1.  The top paragraph of the Management Concerns section on BLAIR1339.

2.  The full paragraph of the Conclusion section on BLAIR1339.

3.  All of BLAIR1337.

4.  The last paragraph on BLAIR1341, which begins "A copy . . . ."

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY G. SMITH, JR., | ) | Case No. 3:15-cv-264 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| LLOYD GENE ROGERS, JR., MARK | ) | |
| YINGLING, RAY BAKER, BROOKE | ) | |
| ECHARD, JOSEPH FOX, JUSTIN | ) | |
| SHRIVER, PAUL KIFER, MICHAEL M. | ) | |
| JOHNSTON, and BLAIR COUNTY, | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**NOW**, this 10th day of July 2017, the Court having conducted an in camera review of the PADOC report and for the reasons explained in the memorandum opinion accompanying this order, it is **HEREBY ORDERED as follows:**

**On or before July 24, 2017**, Blair County will produce the PADOC report and related materials (BLAIR1328-83) to Smith and unredact the following portions:

1. The top paragraph of the Management Concerns section on BLAIR1339.

2. The full paragraph of the Conclusion section on BLAIR1339.

3. All of BLAIR1337.

4. The last paragraph on BLAIR1341, which begins "A copy . . . ."

**BY THE COURT:**

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE